UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ALESCO PREFERRED FUNDING XIV, LTD., | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-0672-B |
| | § | |
| DNIC INSURANCE HOLDINGS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. Doc. 49. For the reasons that follow, the Court **GRANTS** the motion.

## I.

## BACKGROUND[1]

This is a breach-of-contract case. In December 2006, Defendant DNIC Insurance Holdings Inc (DNIH) issued nearly fifteen and a half million dollars worth of debt securities to U.S. Bank National Association (Trustee) as trustee of DNIH's capital trust (Trust). Doc. 56, Def.'s Resp., 2. The Trust simultaneously issued to its investors fifteen million dollars of preferred securities. *Id.* Plaintiff Alesco Preferred Funding XIV LTD (Alesco) purchased those preferred securities from the Trust for fifteen million dollars. *Id.* In exchange, DNIH promised to return to Alesco the fifteen-million-dollar principal (the Principal) plus interest. *Id.* This transaction occurred pursuant to a

---

[1] The facts are taken from the parties' briefs and appendices, and are undisputed unless otherwise indicated.

-1-

Junior Subordinated Indenture (Indenture). *Id.* At issue in this case is the Indenture's "Significant Subsidiaries" provision. It prevents DNIH from selling its significant subsidiaries unless the buyer expressly assumes DNIH's obligation to pay Alesco in a supplemental indenture, which must be executed at the sale's closing. *Id.* at 2–3; *see also* Doc. 1-1, Indenture, § 8.1(a).

In March 2013, DNIH sold Dallas National Insurance Company (DNIC), one of DNIH's significant subsidiaries, to Lonestar Holdco, LLC (Lonestar). *Id.* at 5. Yet DNIH and Lonestar did not execute a supplemental indenture requiring Lonestar to assume DNIH's repayment obligations before closing. Doc. 50, Pl.'s Br. in Supp., 5; *see also* Doc. 1-6, Certificate to Trustee, 2. Instead, DNIH and Lonestar agreed to execute a supplemental indenture sometime after the sale. Doc. 56, Def.'s Resp., 5–6. But they never did. *Id.*

DNIH's failure to timely execute a supplemental indenture constituted a default under the Indenture. Doc. 1-1, Indenture, § 5.1(c). So on October 5, 2015, Alesco accelerated DNIH's repayment obligation, making the Principal and any accrued interest due to Alesco immediately. Doc. 50, Pl.'s Br. in Supp., 7. DNIH did not pay Alesco, so in March 2016, Alesco filed this breach-of-contract lawsuit to recover from DNIH the Principal and more than two million dollars of interest accrued since May 1, 2017. *Id.* at 8–9.

Alesco filed a motion for summary judgment, Doc. 49, arguing DNIH breached the Indenture by failing to execute a supplemental-indenture before selling DNIC to Lonestar, Doc. 50, Pl.'s Br. in Supp., 11. According to Alesco, DNIH must now return the Principal to Alesco, plus interest. *Id.* DNIH counters that its default should be excused, and, in the alternative, argues Alesco is not entitled to the interest yet. Doc. 56, Def.'s Resp., 12–15. Alesco's motion for summary judgment is now ripe before the Court.

# II.

# LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the movant may satisfy its burden just by pointing to the absence of evidence supporting the non-movant's case. *Id.* at 322–23.

If the movant meets that burden, then the non-movant must "show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted). And significant probative evidence is just that: significant. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). "[M]etaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not do. *Id.* (internal citations and internal quotation marks omitted). Rather, "the non-movant must go beyond the pleadings and present specific facts

indicating a genuine issue for trial." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

To be sure, the court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But it need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Simply put, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Id.* If it cannot, then the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Alesco asserts in its motion for summary judgment that DNIH breached the Indenture when it sold DNIC without first executing a supplemental indenture requiring Lonestar to assume DNIH's obligation to pay Alesco. Doc. 50, Pl.'s Br. in Supp., 11. In response, DNIH concedes it did not timely file a supplemental indenture, but contends summary judgment should not be granted because (1) Alesco waived the supplemental-indenture requirement; (2) Alesco prevented DNIH from fulfilling the supplemental-indenture requirement after the sale; and (3) Alesco cannot demand immediate payment of the interest. Doc. 56, Def.'s Resp., 12–15.

But before the Court considers the merits of DNIH's arguments, it first notes that New York

law applies because the Indenture says so.[2] Doc. 1-1, Indenture, § 1.11. And when the parties have contractually stipulated what state's law should apply, "judicial respect for their choice promotes the policy of protecting their expectations." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

*(1) Waiver*

The elements of a breach-of-contract claim under New York law are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Parties may waive their contractual rights if they knowingly, voluntarily, and intentionally abandon them by affirmative conduct or inaction. *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006). "Waiver is an intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988). The waiving party must "clear[ly] manifest[] [its] intent." *Id.*

DNIH argues summary judgment is improper because Alesco waived the supplemental-indenture requirement. Doc. 56, Def.'s Resp., 12–13. Specifically, DNIH asserts Alesco waived the supplemental-indenture requirement by accepting interest payments from Lonestar[3] after the sale. Doc. 56, Def.'s Resp., 13. Alesco counters that accepting payments from DNIH cannot be construed

---

[2] The parties agree. Doc. 50, Pl.'s Br. in Supp., 10; *see* Doc. 56, Def.'s Resp., 12.

[3] Alesco asserts that the interest payments came from DNIH, not from Lonestar. Doc. 58, Pl.'s Reply Br., 7–8. The Court need not resolve this contention because it concludes receiving payments is not a clear indication of waiver.

as a waiver and that it did not otherwise waive the supplemental-indenture provision. Doc. 58, Pl.'s Reply Br., 4–8.

The Court agrees with Alesco—even when viewing the evidence in a light most favorable to DNIH, receiving interest payments is not a "clear manifestation of [Alesco's] intent" to waive the supplemental-indenture requirement. *See Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (explaining that an insurance company does not waive its contractual rights when it continues to collect premiums).[4]

*(2) Tendered Performance*

DNIH argues in its response that the Court should not grant summary judgment because Alesco prevented DNIH from curing its default. Doc. 56, Def.'s Resp., 13–14. DNIH says the Indenture gives it the right to cure its defaults. *Id.* at 14. DNIH argues it attempted to cure its default after the sale by presenting Alesco with proposed supplemental indentures and asking Alesco to approve them before DNIH went any further. *Id.* DNIH explains that Alesco did not approve any of DNIH's proposed supplemental indentures, so DNIH thought it could not execute one. *Id.*; *see also id.* at 8 n.31. DNIH asserts Alesco's refusal to approve the supplemental indentures deprived it of a true opportunity to cure. *Id.* at 14. Alesco argues it could not have prevented DNIH and Lonestar from executing a supplemental indenture because Alesco's consent is not a precondition to executing the supplemental indenture under the Indenture. Doc. 58, Pl.'s Reply, 9–10.

The Court agrees with Alesco— the Indenture does not require DNIH to obtain Alesco's consent before executing a supplemental indenture, so Alesco did not have the power to prevent

---

[4] The Court rejects DNIH's related estoppel argument for the same reason.

DNIH from curing. The Indenture only requires that the supplemental indenture be submitted "in a form reasonably satisfactory to the Trustee." Doc. 1-1, Indenture, § 8.1(a). And whether the Trustee tried to prevent DNIH from executing a supplemental indenture is irrelevant because the Trustee is not a party to this suit. So DNIH and Lonestar could have executed the supplemental indenture without Alesco's approval, but did not.

*(3) Immediate Demand of Interest Payment*

DNIH contends the Indenture prevents Alesco from demanding immediate payment of the accrued interest. Doc. 56, Def.'s Resp., 14–15. This is because DNIH, before it defaulted, exercised its right under the Indenture to defer its interest payments until 2019. Doc. 1-1, Indenture, § 3.9(a). Alesco says DNIH's deferral is irrelevant because the Indenture indicates both the Principal and interest become immediately due upon default. Doc. 58, Pl.'s Reply Br., 10. The Court agrees with Alesco. Although DNIH deferred its interest payments, it did so before it defaulted. And once DNIH defaulted, the interest became "immediately due and payable." Doc. 1-1, Indenture, § 5.2(a). And nothing in the Indenture indicates a deferral precludes Alesco from immediately collecting the interest upon DNIH's default.

**IV.**

**CONCLUSION**

The Court **GRANTS** Alesco's Motion for Summary Judgment, Doc. 49, and therefore **ORDERS** DNIH to pay Alesco the Principal and accrued interest. The Court **ORDERS** the parties to submit a proposed final judgment by January 16, 2018.

SO ORDERED.

SIGNED: January 3, 2017.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE